Simon, J.
The plaintiffs are appellants from a judgment based upon the verdict of a jury, which makes them liable to pay to one of the defendants (Pemberton) the sum of two thousand and five hundred dollars damages, and which orders that the amount of of the claim due to said plaintiffs by both defendants, be extinguished by compensation with the same sum, out of the damages allowed to Pemberton.
This suit was instituted by attachment, for the recovery of the sum of $708 86, which is the amount of the note sued on, upon the oath of the plaintiffs’ counsel, who, in the absence of his clients, who reside in New York, swore to the best of his knowledge and belief, that the amount claimed was justly due, and *163 that the defendants were on the eve of leaving the State for ever, &e. The attachment was issued, and levied upon six trunks containing articles of clothing, and upon other small articles. This was on the 29th of September, 1842. In the mean time, however, the levy being deemed insufficient, the plaintiffs’ counsel filed a supplemental petition, in which, he states that the defendants have fraudulently sent their property out of the State for the purpose of defrauding the plaintiffs out of their just debt, and that they conceal and cover their books of accounts and notes, and refuse to deliver them, and that they are fraudulent debtors within the intent and meaning of the act of the legislature, approved March 28th, 1840, entitled “ An act to abolish imprisonment for debt.” That one of the defendants (Peck) has left the State never more to return, and that Pemberton is about to abscond from the State forever, and that an arrest is necessary, &c. The oath was again taken by the plaintiffs’ counsel, who swore to the best of his knowledge and belief, to the reality and justness of his clients’ demand, and to the facts of Peck’s having left the State, and of Pemberton <fc Peck’s being fraudulent debtors, adding that the oath was not taken for the purpose of vexing the defendants, &c.
Pemberton was arrested, and having failed to give the necessary bond required in such cases, he was lodged in the jail of the parish of Natchitoches.
The defendants filed their answer, in which they pleaded the general issue; but Pemberton, for separate answer, denied being guilty of any act of fraud as charged by the plaintiffs in their affidavit ; he further avers, that no sufficient grounds of imprisonment are set forth in plaintiffs’ petition and affidavit, to justify his imprisonment; that the law of 1840 is unconstitutional, so far as it provides for the imprisonment of the party convicted of fraud, as under the constitution of the State and of the United States, the party accused of a crime has a right to a trial under a presentment or information by a Grand Jury ; atid that said law violates the 18th section of the 6th article of the constitution of the State. He prays for a trial by jury, to be discharged from imprisonment, and for five thousand dollars damages for the false *164 imprisonment he has suffered in consequence of the plaintiffs’ unlawful and oppressive proceedings, &c.
The evidence is voluminous. It tends principally to establish the alleged facts of the defendants’ insolvency, and to prove their conduct in the administration of their commercial affairs some time before, and at the time of the institution of this suit; gives a detail of circumstances going to show their intention to leave the State and to settle in the' Republic of Texas ; attempts to show that, in order to attain their object, a large portion of their goods had already been sent out of the State at the time the attachment in this case was issued; and seems to have been introduced for the purpose of justifying the harsh measure to which the plaintiffs’ counsel thought it necessary to resort, in the exercise of his duties towards his clients, in order to secure their claims. On the other hand, the defendants have attempted to explain by testimony, all the different circumstances proven against them ; they have endeavored to rebut the charge of fraud on which the writ of arrest was obtained; and, to prove.that said charge is unfounded, they introduced witnesses to show the extent of the damages sustained by Pemberton, and to establish the character and good reputation of the latter ; but as it is not our object, in the state in which the cause now stands, to investigate and express any opinion on the propriety and necessity of the proceedings which have given rise to this controversy, or upon the sufficiency of the grounds upon which they were based; we shall at once proceed to examine the principal ground upon which the plaintiffs rely, to obtain the reversal of the judgment appealed from.
Our attention has been called to a bill of exceptions taken by the plaintiffs’ counsel to the eharge of the Judge, a quo, to the jury, and to the grounds upon which said counsel vainly attempted to obtain a new trial.
It appears from the bill of exceptions, that the court, in giving its charge to the jury, instructed them that they were the judges of the constitutionality of the act of the legislature, passed the 28th of March, 1840, entitled “ An act to abolish imprisonment for debt f that the counsel for the plaintiffs then requested the court to instruct the jury, that if they found the act unconstitutional, they could not under the act, assess damages against the *165 plaintiffs, upon the ground that, if the law was void in itself, the jury could not act under it. But the court refused to give the instruction, and instructed the jury that although the law might be unconstitutional, still they could assess damages against the plaintiffs under the 2294th article of the Civil Code ; and, to the opinion of the court, refusing to give the instruction asked for, and giving the above instructions, the plaintiffs took a bill of exceptions.
The second ground upon which the plaintiffs applied for a new trial, is, that the court misdirected the jury in charging them that they were the proper judges of the constitutionality, or unconstitutionality, of the act of the legislature passed the 28th of March, 1840, under which the fraud in the petition is charged.
We think the charge of the court was insufficient on the legal question submitted to the consideration of the jury. It is true, the jury were judges of both the law and the fact, and that, being in all cases, at liberty to act on both questions, they may, in making their verdict, express their opinion on the law and the facts of the case. Code of Pract. art. 520; 10 La. 81. But this is not to be understood, as leaving to the jury the exclusive right of pronouncing on the application of the law, without having been previously instructed by the Judge, on what the latter conceives to be the law which governs the rights of the parties, and without knowing that law. Indeed, article 516 of the Code of Practice, appears to contemplate that the Judge, in his charge, shall give to the jury, a knowledge of the laws applicable to the cause submitted to them. This the Judge is bound to do, particularly in the case of a remedial law; as otherwise, the jury, who are not composed of lawyers, would often be led astray, or would remain in the dark, as to the application of law questions, to the facts which it is peculiarly within their province to find. Art. 517, which is in these words, “ If, when the Judge shall have finished his charge to the jury, one of the parties believes that the Judge has mistaken the law, which he has stated to the jury, or in the application which he has m,ade of it, he may require the Judge to give his opinion in writing, touching this-matier, and on his refusal, he may take an exception, &c.,” clearly declares, that the Judge ought to give his opinion on the law to the jury, *166 and that either party dissatisfied with it, may avail himself of his objections to it by a bill of exceptions. Here, the opinion of the court, on the constitutionality or unconstitutionality of the law of 1840, upon which the case turned under the pleadings, was not expressed; nay, it was left entirely to the decision of the jury, as the proper judges thereof, without any instructions or reasons under which they could act in the application of that law. Not knowing the opinion of the court upon tjfiis subject, neither of the parties had any opportunity of expressing his dissatisfaction, or of making his objections to the correctness of the charge ; and nothing shows the views, which the jury may have taken, of the important constitutional question upon which the Judge thought proper to abstain from giving them his instructions. District Judges, when presiding over a jury, are not mere automata without power or authority; they have a very important duty to ful-fil, which is clearly pointed out by law ; and although they must abstain from saying any thing about the facts, or from even recapitulating them, so as to exercise any influence on their decision in this respect; (Code of Pfact. art. 516 ;) they should not let the jury retire without their being fully impressed with a proper application of the law to those facts.
With this view of the duties of Judges of inferior jurisdiction, in the cases submitted to juries over which they preside, this case must be remanded for a new trial, with instructions to the Judge, a quo, to express his views or opinions to the jury on the constitutionality or unconstitutionality of the act of the legislature, passed on the 28th of March, 1840, entitled “An act to abolish imprisonment for debt,” which seems to be one of the principal matters in issue between the parties; and to . instruct them accordingly.
With regard to that part of the Judge’s charge, complained of by the appellant’s counsel, and which goes to lay before the jury that principle so often aeted upon, that, “ every act whatever of man, that causes damage to another, obliges him by whose fault it happened to repair it,” as recognized by the 2294th article of our Code; on the supposition that they would find that the law of 1840 is unconstitutional, we are unable to say that it was illegal and improper. It constitutes one of those broad principles or *167 .rules of equity, which juries should never lose sight of, in the adjustment of the rights of their fellow citizens.
Roysdon, for the appellants.
Tuomey, for the defendants.
It is, therefore,- ordered and decreed, that the judgment appealed from be annulled, and reversed, the verdict set aside, and that this case be remanded to the lower court for a new trial, with instructions to the Judge, a quo, to charge the jury according to the rules above recognized; the appellee paying the costs in this court.